UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. _____ -CV

ETKIN & COMPANY, INCORPORATED, a
Delaware corporation,

      Plaintiff,

vs.

SBD, LLC, a Florida limited liability company,

      Defendant.

_____/

**COMPLAINT FOR DAMAGES**

     Plaintiff Etkin & Company, Incorporated ("ECI") for its Complaint against Defendant

SBD, LLC ("South Beach Diet," "SBD," or the "Company"), alleges as follows:

**INTRODUCTION**

     1.     This action arises out of the failure of SBD—the owner and operator of the

"South Beach Diet" business and brand—and its owners, Dr. Arthur Agatston and Mrs. Sari

Agatston (the "Agatstons"), to honor their express contractual obligations to ECI, including their

obligation to compensate ECI for business consulting services rendered by ECI at their request

and for their benefit.

     2.     ECI and SBD are parties to a written, fully-negotiated agreement dated March 23,

2010 (the "Agreement").  Pursuant to the Agreement, ECI was retained to provide SBD with

certain outside business consulting services (the "Services") designed to position the SBD

business to be sold to a third-party acquirer in the future.  A true and correct copy of the

Agreement is attached hereto as Exhibit A.

1

9535442.1

3.      At all relevant times, ECI performed its obligations under the Agreement.  ECI has been, and to this day remains, ready, willing and able to provide SBD with the Services. SBD, however, is refusing to fulfill its end of the bargain.  Instead, and among other things, SBD is preventing ECI from performing, wrongfully withholding payments due and owing to ECI and, through its unequivocal statements and conduct, making clear that it has repudiated and has no intention of living up to its past, ongoing and future contractual obligations to ECI.

## PARTIES

4.      Plaintiff, Etkin & Company, Incorporated ("ECI") is a Delaware corporation with its principal place of business located at 14 East 60th Street, New York, NY 10022.  ECI is a citizen of New York and Delaware.

5.      Defendant SBD, LLC ("SBD" or "South Beach Diet") is a Florida limited liability company with its principal place of business located at 1691 Michigan Avenue, Suite 500, Miami Beach, FL 33139.  SBD is a citizen of Florida, and all of its members reside in Florida.

## SUBJECT MATTER JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over ECI's claims under 28 U.S.C. § 1332.  There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue is proper in this District under 28 U.S.C. § 1391(a), subdivisions (1) and (2), and 28 U.S.C. § 1391(c).

8.      ECI's claims against SBD arise out of and/or relate to the Agreement.  Paragraph 17 of the Agreement provides in pertinent part that "Any suit or proceeding arising out of or relating to this Agreement may be brought in any federal or state court located in "Miami-Dade County, State of Florida, but in no other court."

## FACTUAL ALLEGATIONS

9.      In or around 1995, cardiologist Dr. Arthur Agatston developed the weight loss and diet plan that has come to be known as the "South Beach Diet."  Plaintiff has been informed and believes that following publication of Dr. Agaston's first book, *The South Beach Diet*, in 2003, SBD's popularity among consumers surged and SBD subsequently entered into several product licensing arrangements.

10.      Plaintiff has been informed and believes that due and owing to the popularity of the South Beach Diet and the early success of the licensing agreements, SBD's gross revenues also surged.  In or around 2007, however, both the South Beach Diet's popularity and SBD's gross revenues began to decline precipitously.

11.      Plaintiff has been informed and believes that as a result of concerns over the steep and rapid decline in SBD's gross revenues, concerns over the future viability of the business and, by extension, concerns over the diminishing value of SBD and the South Beach Diet brand, in 2009 the Agatstons—who, in conjunction with certain trusts established for the benefit of their adult children, are the sole beneficial owners of SBD—decided to consider selling the South Beach Diet brand and business.

12.      SBD sought ECI's services as an outside consultant in light of the significant experience and track record of success of its principal, William Etkin ("Etkin"), in advising and selling other private businesses, including other consumer product businesses.

13.      In or around July, 2009, with no formal agreement yet in place, Etkin began advising the Agatstons and SBD.  Etkin and the Agatstons came to the view that given the precipitous decline in SBD's popularity, business and revenues, SBD should first seek to revitalize its business and the South Beach Diet brand and return SBD to sustainable growth in

3

order to position SBD to be sold for full value at some undetermined future date.

14.     Beginning in approximately July, 2009 and continuing through 2010, ECI, working closely with the Agatstons, began devoting substantial time and effort consulting on behalf and for the benefit of SBD.  ECI's efforts included engaging and consulting with SBD's owners and its two employees on a wide range of business issues; studying financials provided by SBD's accountants; studying SBD's agreements with third-parties; meeting with other outside professionals engaged by SBD; meeting with SBD's business partners, licensees, customers and manufacturers of certain SBD products; discussing potential new employee hires; identifying and introducing SBD to new prospective business partners; identifying prospective future product categories and licensees; identifying, selecting, assisting with the engagement of—and negotiating a consulting agreement with—a consumer product brand development/consulting firm with particular expertise in food product licensing and marketing; and working to develop and implement a strategy and approach designed to improve consumer perception of the South Beach Diet brand, among other things.  ECI's efforts were undertaken with the goal of improving SBD's business and revenues and increasing the overall value of SBD's business and brand and its appeal to prospective purchasers.

15.     Seven months after Etkin began advising the Agatstons and SBD, in or around February, 2010, Kraft Foods, Inc. ("Kraft"), the licensed manufacturer of South Beach Diet brand food products, provided SBD with the required notice that Kraft would be terminating its relationship with SBD effective March 1, 2011.  Plaintiff is informed that Kraft was, and had been since 2005, the source of the vast majority of SBD's gross revenues.

16.     Plaintiff is informed and believes that over a period of time beginning in approximately 2006, Kraft had abandoned production of almost all categories of South Beach

4

Diet brand food products to which South Beach Diet had granted Kraft an exclusive manufacturing license—with the exception of certain high-protein bar products that Kraft was continuing to produce, albeit in steadily decreasing numbers.

17.     Approximately 45 days after Kraft notified SBD of its intent to completely end its relationship with SBD—and following the approximate seven month "trial-run" period, during which time SBD and the Agatstons worked closely with ECI and Etkin and had the opportunity to personally and carefully evaluate Etkin's skills, professionalism, and expertise—on or about March 23, 2010, SBD and ECI entered into the Agreement.

18.     Pursuant to Section 2(a) of the Agreement, SBD retained Etkin as a consultant to provide SBD with services and advice regarding SBD's business, enhancement of the South Beach Diet brand, strategic planning and financial and administrative matters with a view to increasing SBD's revenues and profits and positioning SBD to be sold in the future.

19.     In consideration of the consulting services ECI was rendering, and would continue to render, the Agreement expressly provided for specific compensation to be paid by SBD to ECI at specified times during the course of the expected five-year term of the Agreement.  ECI's compensation included an "Annual Fee," calculated as a percentage of the Prime Gross Profit of SBD and the Agatstons' related businesses and payable in quarterly installments, as particularly set forth in Section 3 of the Agreement, and, importantly, a "Sale Bonus" based on the ultimate achievement of a sale of the business at some future date, as particularly set forth in Section 4 of the Agreement, in which ECI currently has an increasing vested interest.

20.     ECI entered into the Agreement with SBD in good faith, and with the knowledge and belief that Kraft, the source of the vast majority of SBD's historic revenues, would not be

5

extending its relationship with South Beach Diet after March 1, 2011, and that ECI therefore had little or no guaranteed compensation beyond year one of its five-year commitment to SBD.  ECI was willing to bear that risk because Etkin believed that as a result of SBD's, the Agatstons' and ECI's combined efforts, SBD would be able to replace, or exceed, the income SBD would be losing from Kraft, and that SBD and/or the South Beach Diet brand could be positioned for sale at a very substantial price at some point in the future.

21.     Due to Kraft's decision to terminate its relationship with SBD, and in recognition of the devastating impact on the South Beach Diet brand that such action could have on SBD's already dwindling business, SBD, the Agatstons and ECI made effectuating a smooth transition from Kraft to another licensee or licensees—while keeping what was virtually SBD's last remaining product category, its high-protein cereal and snack bars, visible in the marketplace—a priority.  Accordingly, during the spring, summer, and fall of 2010, ECI in conjunction with the Agatstons and other professionals engaged by SBD, negotiated a deal with Kraft whereby South Beach Diet would, for nominal consideration, effectively repurchase its bar business from Kraft, and Kraft would, among other things, provide transitional services to support SBD's purchase, and the South Beach Diet business, pursuant to a Transitional Services Agreement, for up to one year following closing.

22.     ECI performed all of its obligations under the terms of the Agreement.  However, beginning in or about December 2010, and possibly earlier, SBD and the Agatstons took steps to prevent ECI from performing by, among other things, withholding from ECI important information pertaining to its discussions with Kraft and others.   SBD also breached its Agreement with ECI by failing to pay monies due and owing ECI by SBD, including that portion of the Annual Fee due ECI pursuant to Section 3 of the Agreement for the quarter ending on

6

December 31, 2010.   On information and belief the SBD-Kraft transaction was not consummated.

23.     SBD has since been preventing ECI from performing its required services, which ECI remains willing and able to perform, especially given the significant value of its vested interest in the Sale Bonus as provided in the Agreement.  ECI has not terminated the Agreement, and does not seek to terminate the Agreement, despite the material breaches of SBD.

24.     All conditions precedent to the filing of this action have been performed, have occurred or have been waived.

## COUNT I – ACTION FOR DAMAGES DUE TO NON-PAYMENT

25.     Plaintiff re-alleges paragraphs 1 through 24 as though fully set forth herein.

26.     This is an action for damages due to South Beach Diet's non-payment pursuant to the Parties' Agreement.

27.     South Beach Diet has materially breached the Agreement by failing to (1) provide ECI with payment of fees due for the period ending December 31, 2010, as required by the Agreement, and (2) reimburse ECI for reasonable out-of-pocket expenses incurred in calendar year 2010.

28.     South Beach Diet has failed and refused to cure these material breaches of the Agreement, and South Beach Diet has unequivocally stated its intention not to fulfill its contractual obligations to ECI under the Agreement.

29.     As an actual and proximate result of South Beach Diet's material breaches of the Agreement, including its failure to compensate ECI in accordance with the Agreement's provisions, South Beach Diet has caused damages to Plaintiff in an amount to be proven at trial.

**WHEREFORE,** Plaintiff demands judgment for damages, plus pre-judgment and post-

judgment interest, and such further and other relief deemed just and proper.

### COUNT II – ACTION FOR DAMAGES DUE TO ANTICIPATORY REPUDIATION

30.     Plaintiff re-alleges paragraphs 1 through 29 as though fully set forth herein.

31.     This is an action for damages due to South Beach Diet's anticipatory repudiation of the Parties' Agreement.

32.     In addition to materially breaching their Agreement with Plaintiff by failing and refusing to pay amounts currently due and owing to Plaintiff under the terms of the Agreement, South Beach Diet has also unequivocally stated its intention not to fulfill its ongoing and future contractual obligations to ECI under the Agreement.

33.     South Beach Diet's failure and unequivocal refusal to perform their ongoing and future contractual obligations to Plaintiff, coupled with their material breaches of the Agreement, have unfairly deprived Plaintiff of the value and benefit of that Agreement, including its vested rights as set forth therein..

34.     As an actual and proximate result of South Beach Diet's anticipatory repudiation of the Agreement, South Beach Diet has caused damages to Plaintiff in an amount to be proven at trial, but reasonably believed to be well in excess of $1,000,000.

**WHEREFORE,** Plaintiff demands judgment for damages, plus pre-judgment and post-judgment interest, and such further and other relief deemed just and proper.

### COUNT III – ACTION FOR DECLARATORY RELIEF UNDER 28 U.S.C. § 2201

35.     Plaintiff re-alleges paragraphs 1 through 24 as though fully set forth herein.

36.     SBD has asserted in correspondence with ECI that SBD has validly terminated the Agreement.  ECI contends that no valid termination of the Agreement has taken place.  ECI is therefore entitled to a declaration concerning the Parties' existing rights and obligations under

the Agreement, including a declaration that the Agreement has not been validly terminated, remains in full force and effect, and contractually and legally obligates South Beach Diet to make bargained-for future payments to ECI pursuant to the terms set forth in the Agreement, under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

37.     Said future payments include (1) annual fees pursuant to the percentages outlined in Section 3 of the Agreement until the Agreement's effective date of termination, (2) quarterly fee payments as provided in Section 7(b) of the Agreement until the Agreement's effective date of termination, and (3) in the event that SBD enters into a transaction for its sale within 18 months after the effective date of the termination of the Agreement, 100% of the Sale Bonus as provided in Section 7(c) of the Agreement.  Further, given ECI's experience and skill, combined with the wrongful "lock out" imposed by SBD, which has prevented ECI from performing its services in support of its vested rights under the Agreement, ECI will likely and proximately suffer damages from any future sale of SBD and/or the South Beach Diet brand to the extent that the value of such transaction has been or is undermined or diminished by SBD's actions or inactions, and is less than that which could have been realized with ECI's participation.

38.     By reason of SBD's actions described in this Complaint, an actual and justiciable controversy has arisen and now exists between ECI and SBD as to the Parties' rights and obligations under the Agreement.  Unless the controversy between the parties is resolved, ECI will continue to be harmed by the uncertainty of SBD's obligation to make future payments, including the Sale Bonus, to ECI under the terms of the Agreement

39.     ECI has no adequate remedy at law.  A declaration is both necessary and useful in resolving the question of the Parties' rights and obligations under the Agreement, including South Beach Diet's obligations to make future payments to ECI under the terms of the

9

Agreement.

**WHEREFORE,** Plaintiff demands declaratory relief, and such further and other relief deemed just and proper.

Dated: April 14, 2011.                          Respectfully submitted,

ARNSTEIN & LEHR, LLP
Counsel for Etkin & Company, Incorporated
Franklin L. Zemel
Natalie F. Guerra-Valdes
200 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida  33301
Ph:    (954) 713.7610
Fax:   (954) 713-7710
Email: flzemel@arnstein.com
           nfvaldes@arnstein.com

GIBSON, DUNN & CRUTCHER LLP
Counsel for Etkin & Company, Incorporated
Orin S. Snyder (*Pro Hac Vice* pending)
200 Park Avenue
New York, NY 10166-0193
Ph:    (212) 351-2400
Fax:   (212) 351-6335
Email: osnyder@gibsondunn.com


By: /s/ Franklin L. Zemel __
      Franklin L. Zemel
      Florida Bar No. 816620
      Natalie F. Guerra-Valdes
      Florida Bar No. 58737

9535442.1